Exhibit A
STATEMENT OF FACTS

1. Defendant Warner Bros. Discovery employed Plaintiff as a Staff Engineer II in the DTC department's *User Engagement* team, later renamed to the *Personalization/Personalization-API* team after the HBO Max launch, from on or about September 16, 2019, through on or about September 30, 2023. At the time of termination, Plaintiff had the longest tenure on the team.

2. Plaintiff's employment was governed by a written agreement that contained no arbitration clause or waiver of judicial remedies.

3. Upon termination, Defendant presented Plaintiff with a separation agreement requiring a general release of claims. Plaintiff declined to execute the agreement, thereby retaining all rights to pursue legal claims against Defendant in this Court.

4. Defendant Warner Bros. Discovery employs approximately 35,000 employees. HBO Max or Max, which Plaintiff worked solely on, has approximately 122.3 million users.

5. Plaintiff was a key contributor to critical and highly visible HBO Max/Max features owned by her team. These features and components are: "Continue Watching" "My List" "More Like This" and "For You"

6. Plaintiff repeatedly saved the team from overlooked errors, serving as an essential source of expertise frequently relied upon by her manager, peers, team and other teams for guidance and support, both before and during her pregnancy.

7. Plaintiff architected the *Model-Service*, which is the bridge between trained machine learning results and the rest of the components of the HBO Max/Max streaming platform, enabling personalization.

8. Plaintiff was entrusted with GDPR compliance and the successful migration of 170 million user data records during the platform's 2021 globalization efforts.

9. Plaintiff assumed senior engineer responsibilities at Warner Bros. Discovery, including leading pre-planning, scrum, daily stand-up meetings, retrospectives, mentoring interns and junior engineers, and proposing process improvements. In 2020, shortly after her hiring, she was promised a promotion to a senior engineer role, which was not granted due to a company-wide promotion freeze caused by the COVID-19 pandemic. After the freeze was lifted, the Plaintiff was not promoted, while one male engineer received promotion around the same time Plaintiff was pregnant in 2021. This male engineer joined the company around the same time as Plaintiff and worked in the same team.

10. According to Xiaotong Zhang's self-reported LinkedIn profile, she worked 8 years after graduation at Amazon. Her longest tenure on a single team was three years and one month, during which she worked on prototyping Amazon Halo, a fitness tracker discontinued two and a half years after its launch. Xiaotong Zhang lacked prior industry experience managing complex, mature product teams with hundreds of millions of users, such as HBO Max and Max.

11. During Plaintiff's employment at Warner Bros. Discovery, she received no write-ups or negative performance evaluations prior to her formal pregnancy announcement in May 2023. She consistently earned performance-based annual bonuses throughout her tenure.

12. Facts on Plaintiff previous pregnancy in 2021:
   a )In 2021, Plaintiff had a high-risk pregnancy involving multiple medical conditions that substantially limited major life activities.
   b)Plaintiff's manager, Yi Xie, contacted HR and Plaintiff was immediately relieved of 24/7 on-call duty;
   c) HR explained that adding the 24/7 on-call work load would be a violation of the 40-hour week medical restriction.
   d)Plaintiff took the manager-approved(Yi Xie) leave from 10/11/2022 before the FMLA leave kicked in and additional manager-approved (Allen Gay and Xiaotong Zhang) leave till 6/2/2022.
   e) Before returning to work, in April 2022, Plaintiff notified Xiaotong Zhang her return date was 6/3/2022 and later requested Xiaotong Zhang to sync team work before her return in June, 2022.
   April 22nd, 2022 11:18 *"Maggie. I just want to sync with you about our milestones next quarter so we could plan in advance."*
   f) On June 3rd, 2022, Plaintiff returned from leave and did not take any FTO or sick leave off for the remaining year

13. The Pregnant Workers Fairness Act (PWFA) was passed in 2022.

14. In March 2022, Xiaotong Zhang was hired; according to her description, she was hired as a manager-in-training and reported to Yi Xie, who was a senior engineering manager. Yi Xie reported to have never worked with Xiaotong Zhang, and Warner Bros. Discovery did not hire a replacement for Yi Xie with similar years of experience in engineering and management. Xiaotong Zhang was never given the responsibility of primary on-call or on the escalation policy. On September 21st, 2023 15:17, Xiaotong Zhang asked the team *"helloo - who here knows how to do oncall overrides in victorops? I'm struggle-bussing"*

15. In July 2022, Deepna Devkar was hired as Group Vice President, Engineering - Content Discovery, Global Streaming. Deepna Devkar was based in New York and had sixteen reports under her, one of them being Allen Gay.

16. Allen Gay was based in Seattle, WA and had five reports under him, one of them being Xiaotong Zhang and another one Dan Gur, Shuo Li's manager.

17. Xiaotong Zhang was based in Seattle, WA and had five reports under her, one of them being the Plaintiff and the only female.

18. The Plaintiff has had **no prior contact—direct or indirect, in person or through any electronic means—with Deepna Devkar whatsoever**. The Plaintiff does not recognize Deepna Devkar by appearance and has never interacted with her in any capacity. To the Plaintiff's knowledge, Deepna Devkar likewise has no familiarity with the Plaintiff—whether by name, appearance, or professional reputation—and would have no independent basis for forming any opinion about the Plaintiff's work or performance. **Any awareness or actions taken by Deepna Devkar regarding the Plaintiff could only have been derived through Allen Gay and/or Xiaotong Zhang, as there exists no other plausible channel of communication or influence between them.**

19. Plaintiff's last interaction with Allen Gay was in early 2022.

20. Warner Bros. Discovery internal organization chart showed that at the time of Plaintiff's termination, Xiaotong Zhang had five reports and they were:

| Name | Status | Sex | Age | Hired | Level | Specialization | Team Since |
|---|---|---|---|---|---|---|---|
| Plaintiff | Terminated | F | 30s | 2019 | L4 | Backend | 2019 |
| Zhenhua Zhang | Employed | M | 30s | 2019 | L5 | Backend | 2022 |
| Andrew Sun | Employed | M | 20s | 2019 | L5 | Frontend | 2023 |
| Daniel Xie | Employed | M | 20s | 2021 | L3 | Backend | 2021 |
| Quan Chen | Employed | M | 20s | 2021 | L3 | Backend | 2021 |

21. Additionally, there was one female engineer collaborating with the team:

| Name | Status | Sex | Age | Manager | Level | Specialization | Team Since |
|---|---|---|---|---|---|---|---|
| Shuo Li | Employed | Female | 40s | Daniel Gur | L4 | Backend | 2023 |

22. Shuo Li had never reported to Xiaotong Zhang. Shuo Li reported to Daniel Gur and currently reports to Allen Gay.

23. Immediately after Plaintiff's termination, the team grew in size. The following people were added within a week of Plaintiff's termination: Alexander Ludkiewicz, Attila Kotsis, Christopher Mattera, Jozsef Helmeczi, L. Fernando Gonzalez, Michael Winburn, Rachel Paresa, Shivani Rasane.

24. Plaintiff's team and the Seattle HBO office had a long culture of "Work hard, play hard ", and a friendly work-from-home policy.

    a) Before COVID, Plaintiff's team had Wednesday as the designated work-from-home day and a half-Friday policy. The bi-weekly paystub recorded 70 hours instead of 80 hours.
    b) In January 2020, Plaintiff's team switched to 5-day work-from-home.
    c) HBO and Plaintiff's team had no issue working remotely and successfully launched HBO MAX during COVID.
    d) Plaintiff's team is still working from home as of today.

25. Plaintiff lived near Seattle and was hired for the HBO Seattle office in 2019. Plaintiff was not a remote hire. At the time of termination, her personal belongings were still in Seattle, WA.

26. Plaintiff never signed any paperwork indicating a change of work location, nor did Plaintiff receive any notification of her work location being changed.

27. The team and organization never received notice of any mandatory policies to return to full-time onsite.

28. The office did not have designated rooms or desks for the team or any individuals to perform work duties at the time of Plaintiff's termination.

29. Plaintiff repeatedly requested to fly to Seattle to meet old and new teammates face to face. Each request was rejected by Xiaotong Zhang.

30. During 1-on-1 virtual meeting calls with Plaintiff, Xiaotong Zhang often turned off her camera.

31. Xiaotong Zhang implemented a Wednesday Happy Hour to encourage the team to work in the office. She often ended up being the only one of the team in the office and she stopped going as well.

32. In June 2022, upon returning from maternity leave, Plaintiff heard complaints from teammate engineers that there were a large number of alarms firing every night and depleting their energy to focus on work during the day, when they had to be on-call 24/7.

33. Xiaotong Zhang never took any on-call responsibilities. The previous manager, Yi Xie, did.

34. In June 2022, shortly after Plaintiff returned, Plaintiff noticed that the engineer who was best appraised by Xiaotong Zhang had spent months on a repo that he could not run locally, and was

asking everyone in the team how to set it up. Plaintiff proactively set up a 1:1 with him and unblocked him. The reason was no one in the team had read the README. Plaintiff later continued mentoring this engineer to get him up to speed.

35. In November 2022, Xiaotong Zhang asked rudimentary questions not appropriate to her level, which could easily be answered by a search, such as *"What does adding TTL to APIs mean? What does it now enable us to do? (Is it alarms?) "*

36. In June 2022, Xiaotong Zhang said *"Everyone's so new to the team (< 1 year) "* and showed she had little knowledge about the team's products:*"Hey! QQ -- when was MLT launched last year?? "*. *"Did we launch any major features last year? " "Also -- what is Rocket data migration? "* ; and was repeatedly asking and relying on Plaintiff to fulfill her managerial responsibilities from June 2022 onward, e.g.: *"Can I get your help with running pre-planning tomorrow? "*. Plaintiff to Xiaotong Zhang: *"We ran retro today and here are the notes.* [https://wiki.hbo.com/display/PDLC/CD+Personalization+Retrospective+2022+22.1.1+-+22.6.21](https://wiki.hbo.com/display/PDLC/CD+Personalization+Retrospective+2022+22.1.1+-+22.6.21) *"*

37. In 2023, Plaintiff had a high-risk pregnancy involving multiple medical conditions that substantially limited major life activities. Plaintiff was in the same team, doing the same job function, used the same email subject, and emailed the same HR staff that handled her case in 2021.

38. On Monday, May 1, 2023, 12:53, Plaintiff emailed two HR "Leave Administration Specialists " that specialized in handling pregnancy requests, Hernandez, Ana (Ana.Hernandez@warnerbros.com) and Moy, Fannie (Fannie.Moy@warnerbros.com). These two HR staff are the same individuals Plaintiff sent the request to in 2021. The two HR staff also responded from LOAADMIN@warnerbros.com, the email on "Warner Bros. Discovery Reasonable Accommodation Request Form. " The title of the email was "Possible Accommodations, " the same as in 2021, and specifically asked to be taken off the 24/7 on-call rotation, citing the 40-hour week medical restriction. **Plaintiff did not notify Xiaotong Zhang due to fear of retaliation and avoiding confrontation.**

39. On Monday, May 8, 2023, 14:00, the HR personnel Fannie Moy failed to show up at the meeting she proposed. Plaintiff expressed openness, offered to reschedule, and gave her personal phone number for contact. HR never called.

40. On Monday, May 8, 2023, 14:34, 34 minutes after missing the proposed meeting, HR personnel Fannie Moy replied, *"Please have your health care provider complete the attached and send back to me by May 31, 2023. Once completed, we can set up another call to go over the form. "*

41. On Wednesday, May 17, 2023, 16:19, Plaintiff submitted the original doctor's note issued from the Women's Obstetrics and Gynecology medical office.

42. **On Thursday, May 18, 2023, 12:10,** after not hearing back for a day, Plaintiff submitted a second document, the signed copy of "Warner Bros. Discovery Reasonable Accommodation Request Form " from Women's Obstetrics and Gynecology medical office.

43. **Plaintiff never heard back from any HR personnel in any form until she learned about her termination on September 13, 2023.**

44. **On Thursday, May 18, 2023, 17:17,** Xiaotong Zhang accessed the 1:1 doc and wrote "Need more 1:1s. " **No 1:1 meeting occurred on that date according to email and Slack records. This marks the first time Xiaotong Zhang accessed the 1:1 doc and the beginning of fabrication of performance documentation. May 18th, 2023 also marks the first time of Xiaotong Zhang's mass intensive edits of performance documentation.** To be noted, the last time Xiaotong Zhang accessed the 1:1 doc was February 16, 2023, 16:39, over 3 months earlier and Xiaotong Zhang did not record anything for 1:1 meetings occurred on 4/6/2023, 5/2/2023, 5/16/2023.

45. Under Xiaotong Zhang's management, Plaintiff had multiple pregnancy-related medical complications and had almost zero (0.4 lb) weight gain vs. normal pregnancy weight gain range of 9 to 18 lbs. The fetus was also diagnosed with abnormalities discovered in the anatomy scan.

46. Following termination from Warner Bros. Discovery and cessation of Xiaotong Zhang's management, Plaintiff started to gain weight at a normal pregnancy pace and experienced no further pregnancy complications. Fetal abnormalities were also resolved.

47. On Thursday, May 25, 2023, 15:27, Plaintiff said, "I will be on call tonight." Xiaotong Zhang replied, "OK, " at 15:29, confirming the manager's expectation of Plaintiff working outside of normal business hours as part of the 24/7 on-call duty shift.

48. On June 1, 2023, 15:32, Xiaotong Zhang accessed the 1:1 doc and wrote "Ask more questions " as the only comment. **No 1:1 meeting occurred on that date according to email and Slack records. This record was later furnished on July 21, 2023, immediately after Defendant called HR and inquired about Plaintiff's protected status.**

49. On June 13, 2023, Xiaotong Zhang was late for a 1:1. Plaintiff reminded Xiaotong Zhang at 15:34. The meeting lasted only around 10 minutes vs. the standard 30 minutes. Xiaotong Zhang edited the 1:1 file at 15:36 and sent a link to a "career journal " after the meeting, which was empty at 15:52. **This record was also later changed on July 21, 2023** by Xiaotong Zhang by adding "sent role guideline for reference. " Most likely, Xiaotong Zhang was referring to "Engineering Level Expectations V1.0.pdf. " In contrast to the actual event, this document was sent on July 13, 2023, 12:13, instead of June 13th, 2023 as Xiaotong Zhang later claimed.

50. On June 14, 2023, during the daily standup meeting, Xiaotong Zhang ridiculed and humiliated Plaintiff in front of her colleagues, laughing and calling her a "robot ". Plaintiff dropped out of the

call and sent standup notes in team chat, attempting to smooth over the awkwardness by calling herself a "robot " in a light-hearted manner. No one responded or replied. Despite a consistent pattern of derisive behavior in the past, this was the first time Xiaotong Zhang openly ridiculed Plaintiff using a direct verbal insult.

51. There was no verbal or written communication between Xiaotong Zhang and Plaintiff from June 13, 2023 to July 11, 2023, despite Plaintiff, on June 27, 2023, tagging Xiaotong Zhang for creating a ticket of work for Xiaotong Zhang and facilitating conversation between Xiaotong Zhang and staff from other teams, and on July 10, tagging Xiaotong Zhang for team discussion.

52. On July 11, 2023, 11:11, Xiaotong Zhang cancelled a 1:1 meeting for the reason that the career doc "has no major updates. " Plaintiff opened the career journal doc and saw she was expected to write a performance doc covering the past 1.5 years.

53. There were no performance document requests or performance reviews done since COVID. The last time Plaintiff was requested to provide performance documentation was in 2020, when she was promised a promotion.

54. On July 12, 2023, Plaintiff purchased a flight ticket for a family reunion in Lake of the Woods, Sioux Narrows, Ontario, Canada. It was on short notice due to family emergencies and for her grandmother, who passed away during COVID and had no funeral.

55. On July 13, 2023, **despite having a 1:1, there were no entry of 1:1 records.**

56. On July 20, 2023, Xiaotong Zhang learned of Plaintiff's travel plan and said, *"Helloo — We do have unlimited PTO, but just be cautious how many weeks you've already taken off this year. If you're going to be on-call, please make sure you have internet or you really need to get someone to cover for you. I'd rather you let me know far in advance you need to take time off rather than so close due to planning purposes! "*

57. From September 2022 to September 2023, Xiaotong Zhang took 72 days off, while Plaintiff took 29 days off, including the 10 days in Canada. In 2024, Xiaotong Zhang was absent for 109 working days. In 2025 till this date, Xiaotong Zhang was absent for

58. On July 20, 2023, Plaintiff notified Xiaotong Zhang, *"The internet was not stable. The cabin is in a rural area (Sioux Narrows, ON, population ~800) but has internet. If the internet is not reliable, I'll swap my **on-call duties** with the team. But I might take 8/7–8/11 off just because having unstable internet might affect my ability to get the work done. Just want to let you know in advance. "*
59. **On July 21, 2023, 10:36,** Xiaotong Zhang edited notes on 1:1 and backdated to "7/13 " and added, *"Xiaotong Zhang is having a hard time understanding what you are working on and potential delays "*.

60. **On July 21, 2023, 10:58,** Xiaotong Zhang notified Plaintiff that she spoke to the HR about her protected status.

*"Hello! Just wanted to give you a quick update —*

1. *Spoke with HR — for your maternity leave details, please work closely with the Leave Services team instead as they'll work with you directly and loop me in as necessary. Here's the article for more details!* [https://warnerbros.service-now.com/ec?id=ec_kb_article_view&sysparm_article=KB0034026](https://warnerbros.service-now.com/ec?id=ec_kb_article_view&sysparm_article=KB0034026)
2. *Do you know when you're expected to start? Just for planning purposes. Sorry if I've already asked you! "*

61. **On July 21, 2023, 11:03**, Xiaotong Zhang did the following edits to the 1:1 file, **this was the 2nd time large extensive edits were done:**

> a) Deleted the entire 1:1 notes on "2/26 " and added fresh comments. No 1:1 had occurred on 2/26.
> b) Added fresh comments dated "5/18 ". This is the date Plaintiff submitted "Warner Bros. Discovery Reasonable Accommodation Request Form ". No 1:1 had occurred on 5/18.
> c) Added almost all comments dated "6/1. " No 1:1 had occurred on 6/1.
> d) Created comments dated "6/13. "
> e) Added a large chunk of comments dated "7/13. "
> f) Created comments for a future date, "7/25. " No 1:1 had occurred on 7/25. The 1:1 occurred 5 days later on 7/26/2023.

62. On July 21, 2023, 15:07, Plaintiff said to Xiaotong Zhang, *"Thank you for looking out for me "* and *"Btw, I got all these tickets done by (the) end of the week just as I promised. Already marked them in JIRA. I am also covering on-call for Andrew till the end of the week. "*

63. On Sunday, July 30, 2023, 00:08, Plaintiff arrived in Canada and notified the entire team of limited internet access and tagged Andrew Sun, the team mate that she pre-arranged to take over on-call duty shifts. Andre Sun replied right away and took over the on-call duty shift.

64. On Monday, July 31, 2023, 10:59, Xiaotong Zhang told Plaintiff, *"Hey just saw your message — taking about two weeks off and not letting me know first is not OK. I will be taking your allocation away from this sprint then, but PLEASE work on your career journal as that can easily be done without internet. Thank you. "*

65. On Monday, July 31, 2023, 15:17, Plaintiff replied, *"Hi Xiaotong, I am very very sorry about it. I thought my WBD on-call device would have coverage and turned out it had coverage it's just the Canadian provider here contracted with ATT has no bandwidth. So I have signals (3 bars) but I don't have data. It took several minutes just to send a single slack message. I figured my communication*

*will be severely impacted and definitely could not join any stream meetings. That was what I was afraid so I let you know my concerns a few weeks ago. I took notes of our last conversation and had my one week on-call shift taken care off by Andrew as he also owes me 3 days. As for the work, I don't want to over-promise given the current limitations so I would rather take the week off and let someone else take the tasks. I will be more mindful to both the team and you in the future. Again, I am sorry about it. I let the team know about the situation the night I arrived. =)  And thank you again for your consideration and understanding. ( I have worked on the ticket that was supposed to be on my plate i.e.  creating the Kafka Client and I am happy to either handover the knowledge to another team member or continue work on it when I get back) "*

66. On August 1, 2023, 13:35, Xiaotong Zhang said, *"As your manager, so in the future, I would like to at least get a message about you taking the time off and rather than making that– you know that you updated the calendar invite to make. I do recall, I recall our conversations about, saying multiple times that if you, you're not sure, you NEED to make sure you're covered for your on-call for both your own–for on-call duties. Also, taking time off requires notice and requires approval notice. Also, you making sure you can continue the work on the– when you get back when– since you don't, so it's not too stable, so no need to handle. "*

67. Xiaotong later informed Plaintiff that the reason she was angry was because Plaintiff had notified the whole team of her situation with reduced internet access (on July 30, 2023, 00:08) without first notifying her manager (Xiaotong) separately.

68. On August 16, 2013, 10:27, Xiaotong asked Plaintiff, *"Is your doctor's appointment an all day next day or is it only for a few hours of time? "*
Plaintiff replied, *"It's all day, it's a doctor's appointment plus lab work done. "*
Xiaotong replied, *"I understand, "* but replied, *"I need to know if it is a full day or not? "*
Plaintiff replied, *"Yes, it is. "*

69. On September 5, 2013, 11:12, Plaintiff exported her on-call log from August 2022 to August 2023, to provide an accurate record of her on-call for her career documentation, including cross-referencing shift times with alarm logs for trends in logs.

70. On August 16, 2023, 16:03, Xiaotong Zhang said, *"Wait, you have TWO full-day doctor's appointments next week? "* The Plaintiff replied, *"I changed the one from the 25th to the 24th. The doctor's office just informed me. There is another that is the anatomy ultrasound. "* Xiaotong Zhang replied, *"2 full days is a lot — let me know if they're actually full days. "*

71. On August 21, 2023, from 13:57 to 16:32, Xiaotong Zhang **created and edited at four different times on a 1:1 record for the future date of "8/22. "**

72. On Tuesday, August 22, 2023, 15:36, Plaintiff responded to Xiaotong Zhang's comment on the career doc that negated and twisted her contribution by uploading two screenshots and stating, *"I was*

*going to include those on-call logs to the career doc. It shows after my shift, our alerts were drastically decreased. "* Xiaotong Zhang did not reply and later avoided the topic.

73. On August 22, 2023, during the 1:1, Xiaotong revealed to Plaintiff that while the Plaintiff was absent, she had contacted HR and asked for ways to fire the Plaintiff to get a legally defensible reason. HR suggested **"Work Abandonment "** as an option, which would require Xiaotong Zhang to not know where the Plaintiff was, as often employees did not disclose the location of their absence for personal privacy. Xiaotong Zhang said HR asked her, "Do you know where she is? " Xiaotong replied, "Unfortunately, yes. " The Plaintiff had notified Xiaotong on July 20, 2023, of the exact location of her absence (Fact 58). Xiaotong further disclosed that the reason for letting the Plaintiff know she contacted HR was to warn the Plaintiff about taking any more days off in the future, whether for medical reasons or not. She stated that any future discussions regarding leave should go directly to HR and she did not need to know about it.

74. On August 22, 2023, during the 1:1, Plaintiff said she had made detailed comments on her tickets and left information required to complete the ticket if anyone decided to take over. Plaintiff asked Xiaotong Zhang if anyone took over her tickets during her absence. Xiaotong Zhang replied that the only other person who had the skills to do that ticket was Shuo Li, who was on FTO at the same time. Also, the tickets were not urgent, so the Plaintiff could continue work on the tickets later. Plaintiff was relieved that no work progress was impacted but was also puzzled that Xiaotong Zhang had expressed urgency and anger directed at her, when no work was impacted and another engineer was also absent.

75. On August 22, 2023, during the 1:1, she told Plaintiff to drop off her work ticket and focus on finishing the career journal instead.

76. On August 23, 2023, Plaintiff contacted Hartford and reached out to initiate a Short-Term Disability claim and Leave of Absence starting in January 2024. Plaintiff found the case records had been deleted after Plaintiff's termination.

77. On September 6, 2023, from 11:45 to 15:47, Xiaotong made 6 edits to the 1:1 doc, and added fresh comments to dates "6/1 " and "6/13. " **No 1:1 meeting occurred.**

78. On September 7th, 9:59 Xiaotong Zhang created 1:1 notes backdated to "9/6". At 15:31 the actual 1:1 began where the Plaintiff showed Xiaotong Zhang that she had addressed the comments in the career journal and pointed to the JIRA ticket for the career Journal and asked "*Shall I mark it as done ?*". Xiaotong Zhang replied *"Thanks! Will take a look!"* Xiaotong Zhang never gave any feedback afterwards.

79. On September 7th, 2023, during planning, Xiaotong Zhang openly criticized Plaintiff for not vetting all the tickets under *Content-ID-Mapping*. These tickets were NOT created by Plaintiff nor was the Plaintiff familiar with the feature as it was owned by Shuo Li, who is from the

*Content-ID-Mapping* team. Shuo Li did not report to Xiaotong Zhang. Plaintiff was assigned by Xiaotong to assist the implementation. Plaintiff went through all the *Content-ID-Mapping* tickets and alerted the team of "a potential blocker for progress" at 16:44 PM. While waiting for Xiaotong to respond, Plaintiff found the original design doc which was "Approved" by the team months ago, and found that the design doc was incorrect and used the wrong API protocols. Xiaotong covered up the mistake for Shuo Li and only asked her to fix it days later. Plaintiff was never acknowledged for competence or proactive ownership abilities. Furthermore, in the 1:1 doc this incident was recorded as coaching Plaintiff to "Look up documentation, Seek help if necessary, Ask questions - Can't blame the team for missing something - if you realize this was missing in the design doc, you should call it out."

80. On September 13, 2013, Plaintiff was notified of her termination. She asked Xiaotong Zhang if she had prior knowledge about it. She replied, "*I'm hearing about it today,* " "*I don't know anything and I can't say anything—I just found out about you today.* " She continued to ask Plaintiff to work on after HR had notified her otherwise.

81. Plaintiff was the only and only female engineer reporting to Xiaotong Zhang that was terminated.

82. On the Employee Information, the reason for termination was "Job Elimination".

83. There was no internal or external notice for this layoff.

84. No WARN notice was filed in Washington State, New York, or California for this layoff.

85. On September 14, 2013, Plaintiff emailed Avi Sax to "resolve this issue with your org and HR amicably, " seeking resolution.

86. On September 16, 2013, Plaintiff found the existence of the 1:1 doc that Xiaotong had been editing unilaterally since the day she submitted her request for reasonable accommodation on May 18, 2023.

87. **On September 19, 2023, Plaintiff emailed HR 2nd time to request "personnel records. "** Hannah Lucille replied, *"Can you clarify what you're looking for? Also, do you want to connect live? "* Plaintiff gave her number and a call was scheduled for September 25, at 14:30, PST, but Hannah Lucille never called her nor sent any records to her.

88. On September 19, 2013, Plaintiff sent another request email for "personnel records " to the two emails on the "Separation Paperwork " email, Schechter-Adler, Lara (at lara.schrechter@wbd.com) and Savarese, Brittany (at brittany.savage@savarese.wbd.com).

89. On September 21, 2023, Plaintiff sent Hannah an email, *"Formal Complaint about Pregnancy Discrimination, "* to file a formal complaint.

90. On September 21, 2023, 13:19, Savare replied,*"We don't have formal personnel profiles in a folder to send, "* denying receipt.

91. On September 21, September 2023, 21:19, Hannah cancelled the scheduled call by email, saying the call would instead be with Patrice Grimes, the investigator. WBD omitted this cancellation to EEOC.

92. On September 22, 2023, 09:11, Patrice Grimes, the People Relations investigator, contacted Plaintiff, requesting an interview over the phone. Plaintiff refused and requested the investigation be conducted via email so that a written record would exist.

93. On September 25, 2013, Plaintiff reached out to Hannah Lucille to negotiate severance again.

94. On September 25, 2023, Patrice Grimes replied and compelled Plaintiff to attend the investigation *"You are required to cooperate in investigations as requested "*.

95. On September 26, 2023, Hannah Lucille emailed, saying, *"The intention of our holistic severance package is to provide you with some support during these difficult changes. "*

96. On September 26, 2023 Hannah Lucille stated via email *"As mentioned below, the next step is for you to discuss the concerns with Patrice so that we can meaningfully engage in this. Following that call, we can figure out next steps. Can you please confirm when you are meeting with Patrice Grimes?"*

97. On September 26, 2023, Plaintiff proposed to Hannah Lucille that the severance to be 38 weeks of pay and 1 year of COBRA insurance, the same compensation she would have received by the end of her maternity leave if not terminated. Hannah made no comment to this proposal.

98. On September 26, 2023, Plaintiff contacted Avi Saxena, seeking additional assistance with her discrimination and severance concerns, as prior communications with Hannah Lucille had not resulted in progress toward resolution. Avi Saxena did not respond.

99. On September 27, 2023, Hannah Lucille said *"from the Company's perspective, the investigation process must be completed first"*.

100. On September 27, 2023, Plaintiff replied to Hannah that she was scheduled to conduct the interview on September 29th, 2023 and the Plaintiff *"not been provided with the necessary information regarding the process or the purpose of the investigation."*

101. On September 29, 2023 during the investigation meeting, Plaintiff informed Patrice Grimes that, in August 2023, Xiaotong Zhang sought to terminate Plaintiff's employment during prearranged

leave, consulting HR to identify a legally defensible reason, such as "abandoning work, " which was deemed unviable after Xiaotong Zhang confirmed she knew Plaintiff's whereabouts. Xiaotong Zhang subsequently disclosed these efforts to Plaintiff, warning her against taking future leave, including for medical needs, and directing all leave requests to HR without providing HR contact information, contrary to WBD's policy requiring manager notification of leave. Plaintiff verbally and in writing requested Patrice Grimes to preserve communications between Xiaotong Zhang and HR regarding these actions.

102. On September 30, 2023, Plaintiff was not provided within 60 days with the required initial Consolidated Omnibus Budget Reconciliation Act ("COBRA ") notice regarding her right to continue health coverage. After her termination date, Defendants did not instruct Plaintiff regarding her responsibilities for paying the premium for medical insurance from October 1, 2023 to December 31 nor offered options to pay for medical and dental insurance.

103. On October 2, 2023, Plaintiff reached out to Hannah Lucille "*I have finished my interview with Patrice last Friday. She would send an email to let you know the details. Please let me know when we could start our conversation on renegotiation of the severance package.*"

104. On October 3, 2023, Plaintiff was exhausted from trying to negotiate for 2 weeks with no clear response and asked to have HR final decision by the end of today Oct 3rd 2023. Hannah replied *"Patrice and I are meeting this week to discuss next steps. We will be in touch. Thanks for your patience."*

105. On October 4 and October 9, 2023, Plaintiff sent two emails requesting follow-up.

106. On October 13 and October 17, 2023, Plaintiff sent the Defendant's internal investigator screenshots of Xiaotong Zhang's fabricated performance doc edit history and the Google link of the falsified 1:1. Evidence of Xiaotong shaming her publicly and her disparate treatments between male and female engineers was also shared.

107. On Oct 18th, 2023, Plaintiff email Hannah and Patrice said she *"have been waiting for a month and have done everything I can to resolve the matter" and "request that you keep the process transparent and let me know what to expect"* and proposed time to meet on Oct 20th, 2023.

108. On October 25, 2023, 14:51, Plaintiff emailed to Patrice, emailed to "obtain all pertinent details and preserve all records of the communications that transpired between Xiaotong Zhang and HR"

109. Defendants didn't notify Plaintiff she was no longer eligible for life insurance and dependent care benefits. She continued paying premiums for dependent care and life insurance from October 1, 2023, to December 31, 2023, but Defendants didn't deposit premiums into her dependent care account nor provided coverage, and didn't notify her of changes.

110. On November 3, 2023, as her due date neared, Plaintiff contacted the WBD Employee Benefits Center regarding any potential coverage change. The plan informed her that she still had medical coverage.

111. On Nov 9, 2023, 10:06 AM, Plaintiff said *"With your internal investigation coming to an end a few days ago, I still have not heard back from you. Please let me know if anyone from the WBD is willing to contact me directly regarding re-negotiation of the severance package "*

112. On November 13, 2023, Hannah Lucille emailed Plaintiff, stating that *"the investigation into Plaintiff's allegations of pregnancy, gender, and race discrimination had concluded, and that, based on information previously communicated by Patrice Grimes, WBD was unable to substantiate the claims. Lucille further stated that Plaintiff's separation and severance would be processed according to WBD's standard procedures, with no modifications to the severance package, which was 10 weeks"*

113. On November 22, 2023, Plaintiff's legal counsel served Defendant Warner Bros. Discovery with a litigation hold notice via first class mail and electronic mail at its corporate headquarters (30 Hudson Yards, New York, NY 10001). The notice:
    (a) Formally advised Defendant of its obligation to preserve all documents and electronic records relating to Plaintiff's employment;
    (b) Requested production of Plaintiff's complete personnel file and payroll records within statutory deadlines under California Labor Code §§ 1198.5 and 226;
    (c) Specifically identified categories of evidence requiring preservation, including emails, personnel records, performance evaluations, and all electronic data stored on company systems.

121. Between September 30, 2023, and December 29, 2024, WBD canceled a restricted stock unit (RSU) grant of 1,902 shares, originally awarded on March 1, 2023, without providing notification. This action is alleged to violate the terms of the Restricted Stock Unit Grant Agreement executed on March 23, 2023, and the provisions outlined in the WarnerMedia U.S. Severance Plan handbook received on September 13, 2023.

122. On January 2, 2024, Warner Bros. Discovery without notice, retroactively cancelled Plaintiff's health insurance coverage effective September 30, 2023, violating the Affordable Care Act's notice requirements (42 U.S.C. § 300gg-15). This cancellation came 48 hours before Plaintiff's scheduled cesarean section, stripping Plaintiff right to obtain price estimates under ACA transparency rules (45 C.F.R. § 180.50). The retroactive termination was not based on any demonstrated fraud or misrepresentation as required by (45 C.F.R. § 147.128). The rescission was made without the proper 30-day's notice to Plaintiff.

123. On January 2, 2024, Plaintiff spent hours making 9 calls to the hospital, medical providers, WBD benefit center, and insurance.

124. On January 3, 2024, Plaintiff spent hours making 13 calls to the hospital, medical providers, WBD benefit center, and insurance.

125. On January 3, 2024, WBD Employee Connection notified Plaintiff that her inquiry was escalated to the Benefits Team.

126. On January 5, 2024, WBD Employee Connection said, "*Your coverage was retroactively cancelled on 9/30/2023 because your severance agreement wasn't signed. The WBD Benefits Center has generated a COBRA offer effective 10/01/2023, which you can elect. You should receive COBRA info soon.* "

127. On January 5, 2024, early morning, the hospital billing center called Plaintiff, saying insurance was retroactively cancelled and demanded payment.

128. On January 6, 2024, Plaintiff was discharged from the hospital within 48 hours of surgery, compared to previous stay of 5 days for the same surgery.

129. On January 12, 2024, requests for employee records and litigation hold were filed again. This was the 4th attempt.

130. On January 22, 2024, Warner Media returned "Cal. Lab Code §§1198.5 and 226 Records " for Plaintiff, 4 months after her initial request.

131. No performance records were included in the returned employee records despite it's required by California state law.

132. On January 30, 2024, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC).

133. On February 2, 2024, current employees at the Personalization team notified Plaintiff that they received emails from the legal team to preserve all documents pertaining to Plaintiff.

134. On February 2, 2024, current employees informed Plaintiff that their access to Google Drive - the platform hosting the falsified 1:1 documentation - had been revoked. Multiple engineers confirmed that existing documents were migrated from Google Docs to OneNote and edit histories weren't preserved, despite being technically feasible to transfer with full metadata.

135. On March 20, 2024, Warner Bros. Discovery legal counsel sent official response to the EEOC, alleged:
      a) The termination was part of the "$5 billion restructuring. "
      b) Deepna Devkar was the sole decision maker.
      c) Deepna Devkar wasn't aware of Plaintiff's protected status.

      d) Xiaotong Zhang and Allen Gay had no direct input into the decisions.
      e) Xiaotong Zhang learned "the day before the RIF ".
      f) Xiaotong Zhang accused Plaintiff of poor performance since returning from previous maternity leave.
      g) Xiaotong Zhang accused Plaintiff of poor communication since returning from previous maternity leave.
      h) Xiaotong Zhang accused Plaintiff of poor work ethics, citing being non-responsive, working in loud restaurants, nonresponsive, abandoning work without notice.
      i) The termination was based on Plaintiff's performance and being the only remote engineer.

136. On March 20, 2024, Warner Bros. Discovery legal counsel sent official response to the EEOC, alleged:
      a) The PAPI team had six engineers.
      b) The PAPI had three females, including Plaintiff, Xiaotong Zhang, and another female engineer.
      c) Xiaotong Zhang *"met with engineers for 1:1 meetings bi-weekly (or more frequently upon request). "*
      d) Xiaotong Zhang *"contemporaneously recorded notes from 1:1s and shared them with engineers to track progress. "*
      e) Xiaotong Zhang promoted team wide communications and had been supportive and coaching Plaintiff since she returned from previous maternity leave.

137. On March 29th, 2024, Warner Bros. Discovery share an internal screenshot named "RIF" in the screenshot the following information was identified:
      Column A Position Status : Eliminate Position
      **Column B Notes: *v performer (possibly "low performer")**
      **Column C Manager Preferred End Date: 09/01/2023**
      Column D 2023 cash saving: $63,333
      Column E 2024 cash saving: $253,332
      Column F Employee I(possibly Number) : 6979856
      Column G Full Name : Wenting Rohwer
      Column H L4: Deepna Kevka
      **Column I Direct Manager: Maggie Zhang (Xiaotong Zhang)**
      Column G Position : 122813
      Column K Position Title: Software Engineer II
      Column L Hire Dat(possibly Date): 9/16/2019
      Column M (hidden)
      Column N Perfo (Possibly performance) : Limited
      Column O x P:Limited
      Column P (hidden): limited

138. On April 6, 2025, a current employee informed Plaintiff that the personalization team had remained fully remote and they continued working from home.

139. On April 10th, 2025, Plaintiff submitted the original on-call shift records, exported from Splunk Oncall on September 5, 2013, 11:12 (Fact 69).

140. On April 11, 2025, the Equal Employment Opportunity Commission (EEOC) contacted Plaintiff to communicate their preliminary finding of cause regarding Defendant's failure to accommodate Plaintiff's pregnancy-related needs, constituting a potential violation of employment discrimination laws.

141. On May 12th, 2025, Xiaotong Zhang signed a Declaration and sworn under penalty of perjury under Washington State law that:
    a) The Declaration was based on Xiaotong Zhang's personal knowledge and a review of business records created and maintained by Warner Bros. Discovery.
    b) Xiaotong Zhang was competent to testify.
    c) The declaration was to support WBD's supplement Response to EEOC related to Charge of Discrimination filed by Plaintiff.
    d) Xiaotong Zhang managed Plaintiff from October 2022 to September 2023
    e) Engineers on the PAPI team often worked fewer than 40 hours per week.
    f) Engineers on the PAPI team rarely worked more than 40 hours per week, even if they are on-call.
    g) Plaintiff never complained about working more than 40 hours per week
    h) Between May 2023 to September 2023, Plaintiff was on call from May 15th to May 22, July 21 to July 23, July 24 to July 31, August 28th to September 4th.
    i) Oncall shifts are 7 days from 10am to 10am. An example was given May 15th, 2023 10am to May 22nd, 2023 10 am.
    j) Between May 2023 to September 2023, PAPI team used TWO systems for on-call pages. Victor Ops / Splunk on-call and Pager Duty.
    k) For the dates that Plaintiff was on-call, the PAPI team did not receive ANY low-priority OR high-priority pages from Pager Duty.
    l) For the dates that Plaintiff was on-call, the Plaintiff only received ONE alert on July 24th, 2023, at 9:38 PM GMT 2:30 PST during business hour.
    m) On-call engineers are hardly paged because most, if not all, alerts auto-resolve within 10-15 minutes without any intervention by the on-call engineer.

142. On May 14, 2025, the EEOC formally concluded its investigation and issued Plaintiff a right-to-sue letter, authorizing legal action under Title VII of the Civil Rights Act.

143. In May 2025, a current female plaintiff working with Xiaotong Zhang shared to Plaintiff that:
    a) Xiaotong Zhang had denied her request for 3 weeks of flexible time off (FTO) to visit her parents in China, calling it "excessive," while approving similar requests from male colleagues;

b) When confronting a male engineer about this disparity, he confirmed Xiaotong Zhang had raised no objections to his own extended vacation request to China around the same time;

c) Xiaotong Zhang had utilized approximately three times more FTO days than the combined total taken by all other team members during the same period;

d) She angrily stated: "F***, she told me 3 weeks to visit my parents was too long?" ("TMD 他告诉我3周回国看父母太长?" );

e) Described Xiaotong Zhang's management style as "sly and cunning," citing repeated instances of manipulative behavior toward female team engineers;

f) She felt being treated unfairly and was surprised the company had been allowing Xiaotong Zhang's misconduct to happen for so long. "Her background must be rock-solid and unshakable " (" 她的背景一定坚不可摧，不可撼动")

144. On May 2025, another current female plaintiff working with Xiaotong Zhang shared to Plaintiff that Xiaotong Zhang:

a) Had often remained unreachable during standard work hours;

b) Had often switched her Slack status to "offline" throughout operational periods, contrary to team availability expectations;

c) Demanded in an aggressive tone that she fabricate a promotion peer review document for a male colleague, which she refused to do and subsequently reported to Allen Gay, Director of Engineering and no consequences was given to Xiaotong Zhang;

145. In May 2013, multiple engineers provided Plaintiff with additional concerning reports about Xiaotong Zhang's management conduct including:

a) Documented patterns of hostile treatment specifically targeting female engineers;

b) A specific instance where Xiaotong Zhang displayed overt arrogance toward a female engineer after she successfully completed a design project and demo;

c) Gross technical incompetence;

d) Direct quotations from team members describing Xiaotong Zhang as "deeply jealous"(嫉妒心极强) when subordinates excelled professionally;

e) Comments that "no one wants to work in Xiaotong Zhang's team"("谁愿意在她组里干活呀") and that "Nobody on the team puts in real effort anymore—mainly because lack of motivation, also the company is poorly managed. "现在组里没人努力工作了，主要是没有动力，而且公司 poorly managed"

f) Surprised that the decision maker did not know about Plaintiff's pregnancy , saying, "Everyone knew! How could she not know? "(组里人都知道呀！她怎么会不知道？) assuming the termination decision maker was Xiaotong Zhang.

g) Explicit questions challenging the validity of Plaintiff's termination: "Who said your performance was bad? "(谁说你performance不好呢？)

146. On May 31, 2025, multiple current employees from multiple teams alerted and shared Plaintiff that:

      a) Within 6 months of receiving the notice to retain all email related to Plaintiff, the Defendant implemented an automatic email deletion policy to delete all emails older than 180 days old.

      b) Several colleagues explicitly questioned whether this policy change represented an intentional effort to eliminate evidence relevant to Plaintiff's case, with one voluntarily raising the question: *"Do you think this change has anything to do with your litigation? The company just wanted to destroy evidence and be done with them once and for all."*(你说这个改动会不会和你提诉讼有关？公司想销毁证据，一了百了)

147. In May 2025, multiple employees verified that **searches for Plaintiff's name in their company mailboxes returned no result.**

148. On June 9, 2025, Plaintiff obtained evidentiary documentation of such a spoilage including:
      a) A timestamped screenshot of the email retention policy notification;
      b) The notification header displaying: "Retention WBD - Delete Inbox Item OT 180 days Expires 12/05/2025";
      c) Metadata confirming the screenshot's creation date as June 9, 2025 - exactly 180 days prior to the December 5, 2025 expiration date.

149. On June 2025, multiple current engineers in Plaintiff's team shared with Plaintiff that:
      a) The software and platform for managing on-call duties and maintaining on-call history was changed from Splunk On-Call to PagerDuty.
      b) These changes happened soon after legal preservation notices for Plaintiff's case in 2024.
      c) They were not able to access past on-call history.

150. Plaintiff was diagnosed with Adjustment Disorder with Mixed Anxiety and Depressed Mood (F43.23) in late 2023, which progressed to Trauma and Stressor-Related Disorder (F43.9) by early 2025 due to:
      a) Defendant's retroactive cancellation of her health insurance 48 hours before her scheduled C-section, exacerbating pregnancy-related trauma;
      b) Fabricated performance documentation created by Xiaotong Zhang and later adopted by HR/legal teams;
      c) Gaslighting during internal investigations, where HR asked leading questions to dismiss evidence of retaliation;
      d) Deliberate obstruction of justice, including WBD's destruction of emails and falsified EEOC responses.