UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WENTING ROHWER,

                Plaintiff,

      v.

WARNER BROS. DISCOVERY, INC., *et al*.,

                Defendants.

CASE NO. 2:25-cv-01284-RSL

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

       This matter comes before the Court on "Defendants' Motion to Dismiss Plaintiff's Complaint or in the Alternative Partially Dismiss Plaintiff's Complaint." Dkt. 47. Plaintiff, a former employee of Warner Bros. Discovery, Inc. ("WBD"), was notified on September 13, 2023, that her position was being eliminated at the end of the month. Plaintiff filed this lawsuit in July 2025 alleging violations of Title VII, the Washington Law Against Discrimination, the Americans with Disabilities Act, the Pregnancy Workers Fairness Act, and the Consolidated Omnibus Budget Reconciliation Act of 1985, as well as asserting state common law claims of wrongful discharge in violation of public policy, intentional infliction of emotional distress, fraud, defamation, spoliation, and breach of contract.[1]

---

[1] Plaintiff filed an amended complaint (Dkt. 28) which refers to and incorporates a Statement of Facts (Dkt. 3-2) and a Statement of Claims (Dkt. 3-3) that were attached as exhibits to her original complaint. The Court has

Defendants seek dismissal of many of plaintiff's claims under Rule 12(b)(2), 12(b)(5), and/or 12(b)(6) without leave to amend.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[2] and taking the allegations of the operative pleading (see n.1) in the light most favorable to plaintiff, the Court finds as follows:

**A. Sufficiency of Service and Personal Jurisdiction**

Defendants WBD and Xiaotong "Maggie" Zhang argue that the Court lacks the power to hear the claims against them because they were not properly served with the summons and complaint. Defendant Deepna Devkar opposes the Court's exercise of jurisdiction over her because she does not have sufficient connections with Washington to make the exercise reasonable.

**1. WBD**

Plaintiff served a copy of the complaint and summons on the registered agent of WarnerMedia Services LLC, an affiliate of defendant WBD and a party to plaintiff's

---

considered all three documents as the operative pleading when ruling on this motion to dismiss and has organized this Order in keeping with the Statement of Claims.

[2] The Court has considered the entirety of Dkt. 83 despite it being not in compliance with LCR 7(e)(6) and arguably overlength in violation of LCR 7(e)(3). The Court has also considered the declaration of Zhenhua Zhang that was timely submitted with the opposition. Dkt. 81. The Court has not, however, considered plaintiff's arguments regarding the Zhang declaration (Dkt. 82), the unsworn, inadmissible letter submitted by Shuo Li (Dkt. 80-1), or plaintiff's narrative regarding the Li letter (Dkt. 80). Plaintiff's subsequent filings in opposition to defendants' motion to dismiss (Dkt. 85 and 86) merely compound the problem and have not been considered: they undoubtedly exceed the applicable word limit and are not accompanied by a showing of good cause that might justify their belated submission.

Plaintiff's objections as set forth in Dkt. 89 and 91 are overruled. The use of an "ECF" reference in place of a "Dkt." reference in no way inhibits or interferes with the Court's ability to locate the cited record entry. Plaintiff is directed to include in her signature block the required certification as to the number of words in her submissions (LCR 7(e)(6)) in order to avoid future fights regarding word counts. A submission that stays within the word counts specified in LCR 7(e)(3) is clearly authorized by that rule, and the submission of supplements, notices, addendums, etc. to enhance a filing is generally unauthorized and may, as in this case, exceed the applicable word limits. Defendants' filing of plaintiff's initial disclosures was justified in that it was for the purposes of showing that those disclosures did not, contrary to plaintiff's suggestion, reveal the identity of the confidential informants at issue and that there was no justification for a seal.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 2

severance agreement. The documents were returned to plaintiff on October 9, 2025, because the registered agent did not represent WBD. Dkt. 49-1 at 2. Although service was insufficient and plaintiff has not shown that WBD ever misrepresented itself as WarnerMedia Services LLC or that estoppel would otherwise apply, the Court will exercise its discretion under Rule 4(m) to extend the time in which plaintiff may serve the correct corporate entity.

### 2. Xiaotong "Maggie" Zhang

Pursuant to Rule 12(b)(5), a defendant may move to dismiss an action where the service of a summons and complaint is insufficient. "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Plaintiff has submitted a sworn proof of service indicating that a person named Katlyn Bain delivered the documents to an individual at Ms. Zhang's address who refused to give her name but identified herself as a co-resident. The recipient is described as "a black-haired Asian female contact 25-35 years of age, 5'-5'4" tall and weighing 120-140 lbs with an accent." Dkt. 16.

A signed return of service by a registered process server constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence. *SEC v. Internet Solutions for Bus., Inc*., 509 F.3d 1161, 1163 (9th Cir. 2007) (quoting *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993), which in turn quotes *Hicklin v. Edwards*, 226 F.2d 410, 414 (8th Cir. 1955)). The burden of producing strong and convincing evidence to rebut this presumption cannot be met by a mere conclusory denial of service. *Freeman v. ABC Legal Servs. Inc*., 827 F. Supp. 2d 1065, 1075 (N.D. Cal. 2011). Ms. Zhang offers a declaration stating that her husband found the service papers on their front doorstep on October 9, 2025, that her security system shows no evidence that the doorbell rang at the alleged time of service, and that

neither she nor her husband heard anyone at the door or communicated with the process server. These allegations directly contradict the sworn proof of service provided and create a disputed issue of fact that is not appropriately resolved without an evidentiary hearing. For purposes of this motion, the Court will assume that service on Ms. Zhang was sufficient. If any claims against her survive the merits analysis, an evidentiary hearing will be scheduled.

### 3. Deepna Devkar

Personal jurisdiction over a corporate employee depends on their individual contacts with the forum state, rather than the acts and contacts of the corporate employer. *Failla v. FixtureOne Corp.*, 181 Wn.2d 642, 651 (2014); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522 (9th Cir 1989). In federal court, the jurisdictional analysis generally starts with the "long-arm" statute of the state in which the Court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute (RCW 4.28.185) extends personal jurisdiction to the full extent of the Due Process Clause of the U.S. Constitution. *Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 783 (1989). Under the Due Process Clause, "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316-17 (1945)).

The Court may lawfully exercise the power of judgment over a person in two types of situations, both of which depend on the person's contacts with the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). A defendant with "substantial" or "continuous and systematic" contacts with the forum state is subject

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 4

to general jurisdiction, and can be hauled into court on any action, even one unrelated to its contacts with the forum. *Id.* A defendant not subject to general jurisdiction may be subject to specific jurisdiction if the suit against it arises from its contacts with the forum state. *Id.* "[S]pecific jurisdiction is tethered to a relationship between the forum and the claim," whereas general jurisdiction is not. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007).

Plaintiff alleges that Ms. Devkar remotely managed a team containing at least five Washington resident members and that this fact shows substantial and continuous activities in and directed towards Washington. She also alleges that Ms. Devkar approved the reduction-in-force ("RIF") list that resulted in plaintiff's termination. It is not clear whether plaintiff is arguing that these facts support the exercise of general and specific jurisdiction, so both are analyzed below.

General jurisdiction exists when a foreign defendant's conduct within the state is "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945). Because general jurisdiction allows the court to hear any and all claims against the foreign defendant, even if unrelated to its contacts, "their affiliations with the State [must be] so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Ms. Devkar is not at home in Washington. She resides in New York, does not own property in Washington, does not have any professional licenses or bank accounts in Washington, and does not solicit clients or sales in this forum. Ms. Devkar has traveled to Washington a handful of times for business and pleasure, but these contacts are not continuous, systemic, or substantial for purposes of the general jurisdiction analysis. Her work functions are generally performed

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 5

in New York and, while she may direct the activities of employees in Washington, her personal contacts with the forum are limited.

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 592 U.S. at 359. Under the first prong of the specific jurisdiction analysis, plaintiff must show that defendant "either purposefully availed [herself] of the privilege of conducting activities in California, or purposefully directed [her] activities toward [Washington]." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The purposeful direction analysis is most often used in suits sounding in tort and may be satisfied by a showing that defendant's actions outside the forum state were directed at the forum even in the "absence of physical contacts" with the forum. *Id.*, at 802-03 (*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75 (1984)). "[U]nilateral activity of another party or a third person" does not suffice. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Rather, "[t]he contacts must be the defendant's own choice and not 'random, isolated, or fortuitous." *Ford Motor Co.*, 592 U.S. at 359 (quoting *Keeton*, 465 U.S. at 774). The second prong of the specific jurisdiction analysis requires a showing that the claims asserted arose out of or relate to the defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802. Plaintiff bears the burden of establishing the first and second prongs. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011).

Plaintiff has provided evidence that Ms. Devkar manages employees who were located in Washington and that she approved the RIF list that resulted in plaintiff's termination. Dkt. 83-2 at 1; 83-3 at 3. Plaintiff does not allege that she was a resident of (or even in) Washington at the time of her termination and has not offered any theory under which her discrimination, termination, and/or retaliation claims arose out of Ms. Devkar's supervision of other employees in the forum. Given the lack of evidence tying plaintiff or

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 6

defendant's claim-related activities to Washington in any jurisdictionally relevant way,[3] plaintiff has failed to meet her burden of establishing minimum contacts with the forum or that her claims arose out of or are related to those contacts.

Even if the Court assumes that plaintiff was a resident of Washington at the time of her termination, the exercise of personal jurisdiction over Ms. Devkar would not be appropriate. In deciding whether courts in Washington may exercise specific jurisdiction over a nonresident defendant, the analysis "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton*, 465 U.S. at 775 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). The Supreme Court has made clear that the "minimum contacts" analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Plaintiff's choice of residence "cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*. Where all of defendant's conduct took place outside the forum and her suit-related conduct touched Washington only because plaintiff happened to be in the state, the contacts with the forum are too "random, fortuitous, or attenuated" to justify haling Ms. Devkar into a Washington court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Because the claims against Ms. Devkar must be dismissed for lack of personal jurisdiction, the Court need not consider the plausibility of the allegations with respect to this defendant.

---

[3] Defendants assert that, at the time of her termination, plaintiff was working remotely for WBD's Seattle office from her home in Tennessee. The only evidence cited for the proposition is an EEOC charge filed four months after the termination for which plaintiff utilized a Tennessee street address. Dkt. 48-3 at 2. While there is no indication that plaintiff resided in Tennessee as of September 2023, there is also no indication that plaintiff resided in Washington during the relevant period.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 7

**B. Discrimination and Retaliation Under Title VII and WLAD (Counts I and II)**

Defendants seek dismissal of plaintiff's Title VII claims against Ms. Zhang and defendant Hannah Lucille because there is no individual liability under that statute. *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993). Plaintiff has not opposed this aspect of defendants' motion to dismiss.

Defendants seek dismissal of the WLAD claim asserted against Ms. Lucille because individual liability under that statute is limited to supervisory liability or aiding and abetting liability, and plaintiff has not adequately alleged facts to support either type of liability. The WLAD defines "employer" to include "*any person* acting in the interest of an employer, directly or indirectly . . . ." RCW 49.60.040(11) (emphasis added). Similarly, RCW 49.60.220 states that "[i]t is an unfair practice for *any person* to aid, abet, encourage, or incite the commission of any unfair practice, or to attempt to obstruct or prevent any other person from complying with the provisions of this chapter or any order issued thereunder" (emphasis added). Both provisions broadly apply to "any person" rather than limiting the scope of liability to "supervisors." The Washington Supreme Court interpreted these provisions as an indication that "the Legislature intended to reach individual wrongdoers in the workplace, not just the employers themselves," *Brown v. Scott Paper Worldwide Co.*, 143 Wn. 2d 349, 360 (2001), and courts have held other categories of individuals and entities liable under the WLAD as long as they meet the statutory definition, *see Arthur v. Whitman Cnty.*, 24 F. Supp. 3d 1024, 1037 (E.D. Wash. 2014) (finding that an elected county official falls easily within the "any person" language of RCW 49.60.040(11)); *Arroyo v. Pac. Mar. Ass'n*, 26 Wn. App. 2d 779, 794 (2023) (holding that both a local union and the Seattle Joint Port Labor Relations Committee acted in the interests of the employer and could be held liable under the WLAD).

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 8

But the definition of employer does not extend to those whose discriminatory or retaliatory conduct is not "in the interest of an employer, directly or indirectly" or whose conduct cannot affect the terms and conditions of employment. Thus, unless an employee alleges that the non-supervisory defendant was acting in the interest of the employer when they harassed or discriminated against her and that the conduct affected the terms and conditions of her employment, a WLAD claim will fail. *See Jenkins v. Palmer*, 116 Wn. App. 671, 674–75 (2003) Under this test, it is well established that supervisors may be held personally liable for their discriminatory acts when acting in their employer's interest. *Brown v. Scott Paper Worldwide Co.*, 143 Wn.2d 349, 358, 20 P.3d 921 (2001). In contrast, coworkers often lack the motivation or power to qualify as an "employer" and cannot be held personally liable under the WLAD. *Jenkins*, 116 Wn. App. at 674-75 (dismissing coworker from lawsuit under WLAD where "actions she allege[d] ... did not affect her compensation or other similar terms or conditions of her employment").

Plaintiff alleges that Ms. Lucille is WBD's "Global VP People & Culture" and that she retaliated against plaintiff for requesting pregnancy-related accommodations to her work schedule. Dkt. 28 at 3; Dkt. 3-3 at 6. In particular, plaintiff alleges that Ms. Lucille (1) refused to investigate plaintiff's discrimination complaints, (2) declined to engage in severance negotiations, despite plaintiff's termination, while her claims were being investigated, and (3) notified plaintiff that the investigator was unable to substantiate plaintiff's complaints. Dkt. 3-2 at ¶¶ 87, 96, and 112; Dkt. 3-3 at 8. In her opposition to defendants' motion to dismiss, plaintiff focuses on Ms. Lucille's "explicit tethering of severance to the 'investigation's' outcome[] and the subsequent denial." Dkt. 83 at 18.

Although plaintiff's allegations about Ms. Lucille's position within WBD are vague, the facts of the claim suggest that Ms. Lucille controlled whether and when plaintiff could access severance payments and other post-employment benefits. The question for the

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 9

Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp.*, 550 U.S. at 570. Accepting plaintiff's allegations as true and construing them in the light most favorable to her, the Court finds that plaintiff has raised a plausible inference that Ms. Lucille was acting in the interests of WBD when communicating with plaintiff and that her conduct could affect the terms and conditions of employment.[4]

With regards to the elements of a claim for retaliation, plaintiff must plausibly allege: "(1) the employee took a statutorily protected action, (2) the employee suffered an adverse employment action, and (3) a causal link between the employee's protected activity and the adverse employment action." *Cornwell v. Microsoft Corp.*, 192 Wn.2d 403, 411 (2018). Defendants argue that there can be no retaliation claim because none of the conduct of which Ms. Lucille is accused was in any way related to the termination decision. The alleged retaliatory conduct (withholding or delaying post-termination benefits) is, however, plausibly related to the fact that plaintiff engaged in protected activity when she raised complaints regarding the role her pregnancy and sex played in the termination decision. In this respect, the WLAD retaliation claim against Ms. Lucille may proceed.

## C. Failure to Accommodate Claims (Count III)

Plaintiff alleges that WBD and Ms. Lucille failed to provide reasonable accommodations for her pregnancy-related medical conditions and limitations, resulting in

---

[4] The WLAD does not provide a definition for the term "supervisor," but "[f]ederal law is instructive with regard to our state discrimination laws." *Dedman v. Wash. Personnel Appeals Bd.*, 98 Wn. App. 471, 478 n.8 (1999). A recent state court of appeals decision turned to the National Labor Relations Act, 29 U.S.C. § 152(11), to define "supervisor" as "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." *Keimbaye v. Providence Reg'l Med. Ctr. Everett*, 34 Wn. App. 2d 1095 (2025), *review denied*, 581 P.3d 637 (2026).

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 10

her termination in violation of the Pregnant Worker Fairness Act ("PWFA"), the Americans with Disabilities Act ("ADA"), and the WLAD. Defendants seek dismissal of the accommodation claims against Ms. Lucille on the ground that there is no individual liability under those statutes. Defendants seek dismissal of the PWFA claim in its entirety because the statute was not in effect when she made her pregnancy-related accommodation request.

The ADA, like Title VII, defines "employer" in such a way that individual supervisors or co-workers cannot be held personally liable for failures to accommodate. *See Walsh v. Nev. Dept. of Human Resources*, 471 F.3d 1033, 1038 (9th Cir. 2006). The ADA claim against Ms. Lucille therefore fails as a matter of law. The PWFA prohibits specified conduct on the part of "covered entities," 42 U.S.C. § 2000gg-1, which is defined by reference to Title VII and other statutes referring solely to entities, not individual employees, 42 U.S.C. § 2000gg(2). *See Beddingfield v. United Parcel Serv., Inc.*, No. 23-CV-05896-EMC, 2026 WL 99760, at *5 (N.D. Cal. Jan. 14, 2026). Thus, the failure to accommodate claims asserted against Ms. Lucille under the PWFA also fails as a matter of law. For the reasons discussed above, however, Ms. Lucille falls within the WLAD's definition of "employer," and defendants have not addressed whether the allegations against her create a plausible claim for failure to accommodate under that statute.

The PWFA requires employers to grant "reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 2000gg–1. The statute took effect on June 27, 2023. Although plaintiff first notified WBD of the need for pregnancy-related accommodations in May 2023, she was still pregnant, was still experiencing what she deemed to be pregnancy-related

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 11

discrimination, and was ultimately terminated and denied benefits after the PWFA was effective. Plaintiff has raised a plausible claim for relief against WBD under the PWFA.

**D. Hostile Work Environment Claim under the WLAD (Count IV)**

Plaintiff alleges that WBD and Ms. Zhang subjected her to a hostile work environment by demeaning and ridiculing plaintiff because of her sex and/or pregnancy. In order to be actionable, the offensive or unwelcome conduct must be both on account of a protected characteristic and serious or frequent enough to affect the terms and conditions of employment. *Antonius v. King Cnty.*, 153 Wn. 2d 256, 261 (2004). Plaintiff alleges that Ms. Zhang first verbally insulted her in June 2023 by calling plaintiff a "robot," that Ms. Zhang did not communicate with plaintiff for almost a month from mid-June to mid-July 2023, and that plaintiff was not relieved of her 24/7 call duties despite an accommodation request. Isolated incidents, such as the "robot" comment, are neither severe nor pervasive enough to be the basis of a hostile work environment claim. Nor has plaintiff raised a plausible inference that the lack of communication between plaintiff and Ms. Zhang for a month in mid-2023 was on account of plaintiff's sex or pregnancy or impacted the terms and conditions of her employment. To the extent defendants failed to reasonably accommodate plaintiff's pregnancy by modifying her call obligations, plaintiff may have a viable failure to accommodate claim, but she has not offered any argument or case law in support of the theory that expecting an employee to continue performing the normal duties of her position creates a hostile work environment. This claim fails as a matter of law.

**E. Wrongful Termination in Violation of Public Policy (Count V)**

Defendants argue that plaintiff's wrongfully termination claim against Ms. Devkar should be dismissed because there are no facts suggesting that Ms. Devkar knew plaintiff was pregnant, much less that she was motivated by the pregnancy when approving

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 12

plaintiff's inclusion in the RIF. Because all claims against Ms. Devkar have been dismissed for lack of personal jurisdiction, the Court need not resolve this issue.

**F. Worker Adjustment and Retraining Notification Act of 1988 ("WARN")**

Plaintiff lists WARN as one of the bases for her lawsuit in her amended complaint, Dkt. 28 at 4, and mentions the notice requirements of the statute when arguing that the RIF was pretextual, Dkt. 3-3 at 2, 7, 17-18, and/or that her termination was against public policy, Dkt. 3-3 at 18. Her Statement of the Claims does not assert a separate cause of action for violations of WARN, however, nor does plaintiff allege a triggering event. Plaintiff's attempts to remedy this oversight through speculative assertions in her opposition memorandum is unavailing: the Rule 12(b)(6) analysis focuses on the allegations in the operative pleading, not arguments or new facts asserted in a memorandum. In addition, plaintiff makes no response to defendants' argument that WARN does not impose individual liability. Defendants' motion to dismiss the WARN claim, as currently stated, is granted.

**G. Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") (Count VI)**

Plaintiff alleges that WBD violated COBRA by failing to provide her with timely and proper notice of her right to continue healthcare coverage following her termination and by retroactively canceling her health insurance. In discussing that claim, plaintiff alleges that the retroactive cancelation of insurance without proper COBRA notice violates the Patient Protection and Affordable Care Act ("ACA"). Dkt. 3-3 at 21-22. Defendants argue that there is no private right of action under the ACA and ask that any purported claim under that statute be dismissed. Plaintiff does not oppose this aspect of the motion.

**H. Intentional Infliction of Emotional Distress (Count VII)**

"The tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 13

(3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn. 2d 192, 195 (2003). The claim is asserted against WBD and Ms. Zhang, and defendants seek dismissal on the ground that the conduct of which they are accused was not extreme or outrageous under Washington law.

Taking the allegations as a whole in the light most favorable to plaintiff, she alleges that, upon learning that plaintiff was pregnant and needed to cut back on her 24/7 call schedule, Ms. Zhang, her supervisor, denied the requested accommodation, began creating fake personnel records, and treated plaintiff differently in the workplace. The fake personnel records were then used to justify plaintiff's inclusion in a RIF, resulting in her termination. When plaintiff complained that she had been set up and discriminated against because of her pregnancy and request for accommodation, human resources withheld severance negotiations and payments on the ground that there was an on-going investigation. Plaintiff was not provided any of the required notices regarding post-termination access to health insurance, life insurance, or dependent care benefits, and defendants accepted months of payments for some of these benefits without providing them. Ultimately, on January 2, 2024, plaintiff discovered that, despite having confirmed coverage with WBD's benefits center, her healthcare benefits had been retroactively cut off effective September 30, 2023, reportedly on the ground that a severance agreement had not been signed. Plaintiff had a scheduled cesarean section that same week, and her medical team informed her that bills had been rejected and demanded payment. In the meantime, WBD canceled a restricted stock unit ("RSU") grant of shares. Plaintiff alleges that these attacks on her livelihood and ability to provide for herself during her pregnancy – from the denial of accommodations and termination of her employment to the withholding of her severance payments, withdrawal of insurance coverage, and cancelation of RSUs – were not random administrative errors or occurrences but rather part of an

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 14

orchestrated effort to harm and/or retaliate against plaintiff for her protected activity. If true, a reasonable jury could find that defendants' conduct is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975) (quoting Restatement (Second) of Torts § 46 cmt. d).

**I. Fraud and Defamation (Count VIII)**

Plaintiff has not responded to defendants' argument that the statutes cited for the fraud and defamation claims do not create a private cause of action. These claims are therefore dismissed.

**J. Aiding and Abetting Discrimination under the WLAD (Count IX)**

For the reasons discussed in Section B, plaintiff's state law discrimination claim can proceed against WBD, Ms. Lucille, and plaintiff's supervisor, Ms. Zhang.

**K. Spoliation (Count X)**

Defendant WBD does not seek dismissal of the spoliation claim asserted against it.

**L. Breach of Contract (Count XI)**

Defendant WBD does not seek dismissal of the breach of contract claim asserted against it.

**M. Insurance Bad Faith and Employee Retirement Income Security Act ("ERISA")**

In her opposition memorandum, plaintiff asserts that WBD's retroactive cancelation of her health insurance was in bad faith and violated ERISA. No such claims are asserted in the Statement of Claims, however, and the complaint cannot be amended in a responsive memorandum.

**N. Litigation Misconduct**

Plaintiff accuses defendants of litigation misconduct and requests that the Court deny their motion to dismiss on that ground. The Court has been monitoring plaintiff's

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 15

various accusations of citation, discovery, and disclosure irregularities. The accusations are either misguided or do not justify allowing an otherwise defective claim to continue. To the extent plaintiff argues that defendants have spoliated evidence or have taken inconsistent positions before this Court and the EEOC, plaintiff will have an opportunity to prove those accusations, at which point an appropriate remedy can be imposed.

**O. Leave to Amend**

Because this litigation continues, leave to amend will not be blindly granted. If plaintiff believes she can, consistent with her Rule 11 obligations, remedy the deficiencies identified above, she may file a motion for leave to amend in compliance with LCR 15.

For all of the foregoing reasons, plaintiff's claims against defendant Devkar are DISMISSED for lack of personal jurisdiction under Rule 12(b)(2). Plaintiff's Title VII claims against Ms. Zhang and Ms. Lucille are DISMISSED. Plaintiff's failure to accommodate claim against Ms. Lucille under the PWFA and the ADA are DISMISSED. Plaintiff's hostile work environment, fraud, and defamation claims are DISMISSED. Although it is not entirely clear whether plaintiff intended to assert claims under WARN and/or the ACA, any such claims are DISMISSED as inadequately plead. The following claims that may proceed:

1. Title VII discrimination claim against WBD (Count I).
2. WLAD discrimination claim against WBD, Ms. Zhang, and Ms. Lucille (Counts I and IX).
3. WLAD retaliation claim against WBD, Ms. Zhang, and Ms. Lucille (Count II).
4. PWFA, ADA, and WLAD accommodation claims against WBD (Count III).
5. WLAD accommodation claim against Ms. Lucille (Count III).
6. Wrongful termination claim against WBD (Count V).

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 16

7. COBRA claim against WBD (Count VI).

8 IIED claim against WBD and Ms. Zhang (Count VII).

9. Spoliation against WBD (Count X).

10. Breach of contract against WBD (Count XI).

The Court hereby extends the time in which to accomplish service on WBD until March 13, 2026. Because there are disputed issues of fact regarding the sufficiency of service on Ms. Zhang, the parties shall appear before the Court on March 30, 2026, at 10:00 am for an evidentiary hearing. Plaintiff is advised that she may not rely on the sworn proof of service at the evidentiary hearing but must instead present the testimony of the process server or other admissible evidence showing that personal service was accomplished on October 9, 2025. In the alternative, the Court hereby extends the time in which to accomplish service on Ms. Zhang until March 13, 2026. If plaintiff files a proof of service on or before that date, the evidentiary hearing will be canceled.

DATED this 19th day of February, 2026.

_MM S Lasnik_
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 17